IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DORIS HOGSTON, Executor of   :    CONSOLIDATED UNDER
Estate of HARRY HOGSTON,    :    MDL 875
                                :
    Plaintiff,             :
                                  :
    v.                 :
                                  :    CIVIL ACTION
ALLIS-CHALMERS CORP., et al., :    NO. 06-67847
                                :
    Defendant.           :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    DECEMBER 3, 2009

      Defendant National Service Industries ("NSI"), the last
remaining viable defendant in this action, filed the instant
motion for summary judgment pursuant to Fed. R. Civ. P. 56(b).
For the reasons that follow, Defendant's motion for summary
judgment will be granted.


I. BACKGROUND

      Plaintiff filed the complaint in this action on July 5,
2005, asserting claims for the wrongful death of Harry Hogston
("Decedent"). The Decedent had developed mesothelioma, a cancer
of the lining of the lungs, which caused his death. Plaintiff
alleges that the Decedent's mesothelioma was caused by exposure
to asbestos at the Olin Chemical Corporation Plant (the "Plant")
at Saltville, Virginia.

      The Decedent was employed at the Plant from 1958-1972

as a member of the Plant's maintenance crew.  As a member of the maintenance crew, the Decedent worked with pipe covering and block insulation, which contained asbestos.  Plaintiff claims that the Decedent's work with this insulation and pipe covering was very dusty, and it is likely that he would have inhaled a substantial amount of asbestos fiber during his fourteen years at the Plant.

The specific claims against NSI arise from the activities of North Brothers, Inc., a predecessor in interest to NSI, which was a distributor of Owens-Corning products, including asbestos-containing Kaylo pipe covering and insulation[1], located in the southeastern part of the United States.  Plaintiff alleges that there is significant circumstantial evidence which shows both that North Bros. distributed Kaylo pipe covering and insulation to the Plant during the time that Decedent was employed there and that Decedent was exposed to the Kaylo distributed by North Bros.  Plaintiff avers that North Bros. was negligent in distributing the Kaylo pipe covering and insulation, rendering the conduct of North Bros. a substantial factor in causing the Decedent's death.

Defendant moved for summary judgment on two grounds. First, Defendant alleges that Plaintiff cannot show that the

---

[1]     Kaylo is a brand name specific to asbestos containing insulation products that were produced by Owens-Corning.

2

Decedent was exposed to Kaylo asbestos which North Bros.

distributed.  Second, assuming that North Bros. distributed Kaylo

to the Plant at the relevant time, Defendant argues that

Plaintiff cannot show that any asbestos product distributed by

North Bros. to the Plant was the proximate cause of the

Decedent's death.


II.  LEGAL STANDARD - MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, the

discovery and disclosure materials on file, and any affidavits,

show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).[2]  A fact is "material" if its existence or

non-existence would affect the outcome of the suit under

governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

248 (1986).  An issue of fact is "genuine" when there is

sufficient evidence from which a reasonable jury could find in

favor of the non-moving party regarding the existence of that

---

[2]     This matter is before the Court on the basis of
diversity jurisdiction.  This case was originally filed in the
Virginia Circuit Court in Richmond.  It was removed to the
Eastern District of Virginia on June 12, 2006 and was
subsequently consolidated under MDL-875 in the Eastern District
of Pennsylvania.  With regard to matters of procedure, the Court
will apply federal procedural law as interpreted by the Third
Circuit, the circuit where the transferee court sits.  <u>See</u> <u>In re
Korean Air Lines Disaster of Sept. 1, 1983</u>, 829 F.2d 1171, 1178
(D.D.C. 1987).  Therefore, Fed. R. Civ. P. 56(c) applies as
interpreted by the Third Circuit.

fact.  Id. at 248-49.  "In considering the evidence, the court
should draw all reasonable inferences against the moving party."
El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment
movant to show the absence of a genuine issue of material fact,
'the burden on the moving party may be discharged by showing-that
is, pointing out to the district court-that there is an absence
of evidence to support the nonmoving party's case' when the
nonmoving party bears the ultimate burden of proof."  Conoshenti
v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004)
(quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2
(3d Cir. 2001)).  Once the moving party has thus discharged its
burden, the nonmoving party "may not rely merely on allegations
or denials in its own pleading; rather, its response must--by
affidavits or as otherwise provided in [Rule 56]--set out
specific facts showing a genuine issue for trial."  Fed. R. Civ.
P. 56(e)(2).


III. DISCUSSION

    A. Virginia Substantive Law - Proving Exposure to Asbestos

        Under Virginia law,[3] a plaintiff may prove exposure to

---

        [3]    In applying substantive law, the transferee court must
distinguish between matters of federal and state law.  Where the
Court has jurisdiction based upon diversity of citizenship under
28 U.S.C. § 1332 , the Court will apply state substantive law as
determined by the choice of law analysis required by the state in

4

an asbestos product relying only on circumstantial evidence.
Owens-Corning Fiberglas Corp. v. Watson, 413 S.E.2d 630, 639 (Va. 1992). "Although the fact-finder is not authorized to indulge in speculation or guesswork, this does not destroy the weight of circumstantial evidence in fixing civil liability . . . [b]ut such circumstantial evidence must be sufficient to establish that the result alleged is a probability rather than a mere possibility". Id. Recognizing that when direct evidence is not available, it is unlikely that the Plaintiff would be able to prove the elements of their case with absolute logical certainty, the Watson court held that the jury must be "satisfied with proof which leads to the conclusion with probable certainty." Id.

Defendant, in its motion for summary judgment, points to the absence of evidence to show that North Bros. was a supplier of Kaylo insulation to the Plant. Furthermore, Defendant points out that the only direct evidence as to any specific distributor on the record shows that C.E. Thurston, not North Bros., delivered Kaylo to the Plant during the relevant time.

In response, Plaintiff argues that the cumulative

which the action was filed, in this case Virginia. See Van Dusen
v. Barrack, 376 U.S. 612, 639 (1967) (evaluating applicable law
after change of venue under 28 U.S.C. § 1404(a)); see also In re
Dow Sarabond Prods. Liab. Litig., 666 F.Supp. 1466, 1468 (D.
Colo. 1987) (citing In re Agent Orange Prod. Liab. Litig., 580
F.Supp. 690, 695 (E.D.N.Y. 1984)) (evaluating applicable law
after change of venue under 28 U.S.C. § 1407).

effect of numerous facts permits an inference sufficient to overcome summary judgment that North Bros. supplied Kaylo to the Plant.  Each of the facts and circumstances advanced by Plaintiff will be addressed in turn.  The salient question before the Court is whether or not there is a genuine issue of material fact as to whether North Bros. distributed asbestos containing products to the Plant.

    B. Circumstantial Evidence of Exposure to Asbestos <u>    </u>
<u>    Distributed by North Bros.</u>

        1. Business Relationship between North Bros. and Owens-
<u>Corning</u>

        Plaintiff's argument is syllogistic.  The main premise postulates that North Bros. and Owens-Corning were inextricably intertwined in a business relationship in which North Bros. acted as the distributor of Owens-Corning products, including Kaylo, in the southeastern section of the United States.  Accordingly, if Owens-Corning products were used in a regional Plant within North Bros. distribution zone, it follows that North Bros. was the distributor.  (Pl.'s Resp. to Mot. Summ. J. at 7.)

        To support this theory, Plaintiff points out that between 1957 and 1971 North Bros. purchased from Owens-Corning ranged from $1.7 million to $3.5 million per annum.  (Pl.'s Resp. to Mot. Summ. J. at Exh. A-8-12.) These sales, occurring during the time of Decedent's employment at the Plant, made North Bros. the biggest distributor of Owens-Corning asbestos and non-

asbestos products in the region. (William D. Mathis Dep., Pl.'s Resp. to Mot. Summ. J. at 14, Exh. F.)

Second, and in the same vein, Plaintiff argues that the general business relationship between North Bros. and Owens-Corning became even more entangled when North Bros. was delinquent on accounts payable to Owens-Corning. This delinquency resulted in an installment agreement pursuant to which North Bros. would correct the deficiency through payments, at 4% interest, over five years. (Pl.'s Resp. to Mot. Summ. J. at 8, Exh. A-13.) Plaintiff contends that this agreement further solidified North Bros.' role as a major supplier of Owens-Corning products, both asbestos and non-asbestos, in the region.

Third, Plaintiff points to contract service brochures, letters from North Bros. executives to Owens-Corning and appointment of distributor-applicator forms allowing North Bros. to deliver Owens-Corning fiberglass insulation products throughout the southeast. (Pl.'s Resp. to Mot. Summ. J. at 6, Exh. A-2, A-4-6.) Plaintiff particularly highlights maps, attached to the contract service brochures, that show the regions for which North Bros. was a licensed Owens-Corning distributor. These maps include the western Virginia counties in which the Plant was located. (Id. at Exh. A-2-6.) The maps do not, however, indicate whether North Bros. distributed Owens-Corning products, either asbestos or non-asbestos, to all of the specific

counties included on the regional map, nor do the maps indicate specific plants or locations to which North Bros. distributed Owens-Corning products.

Plaintiff's evidence succeeds in showing that Owens-Corning and North Bros. had a close business relationship covering a large geographic region including the counties of western Virginia and that North Bros. distributed Owens-Corning products (both asbestos and non-asbestos) in the general area. Nothing in the documents or attached maps, however, points to anything more precise than that, much less that North Bros. distributed Kaylo to the Plant specifically.

### 2. Deposition of Fred Borders

Plaintiffs also offer, as further circumstantial evidence, the deposition testimony of the Decedent's co-worker at the Plant, Mr. Fred Borders ("Borders"). Borders worked with Decedent at the Plant from 1958-1964. (Borders Aff. at Exh. D, ¶ 3.) During his work at the Plant, Borders avers that he saw the Decedent working with and around Kaylo asbestos pipe covering and block insulation in the Plant's boiler room. (Id. at ¶ 8.) Additionally, Borders testified that pipes insulated with Kaylo were omnipresent in the Plant at that time. (Borders Dep. at Exh. E p. 137.)

While Mr. Borders's testimony clearly identified Owens-Corning Kaylo as a brand used at the Plant, Mr. Borders did not

have any personal knowledge of how the product was distributed to the Plant. (Def.'s Br. in Supp. of Mot. Summ. J. at 7-8.) Plaintiff tries to fill in this gap by pointing to Borders's testimony that "when [the Owens-Corning Kaylo insulation materials] would come in, it [would] come in railroad cars . . . ." (Borders Dep. at Exh. E p. 130.) Plaintiff then draws the connection to North Bros. by pointing to the deposition of North Bros. salesman Bill Attaway, who testified that North Bros. delivered asbestos block insulation and pipe covering by railroad. (Attaway Dep. at Exh. N, p. 9.) However, Mr. Attaway cannot identify the asbestos block insulation delivered by railroad to the Plant as Owens-Corning Kaylo.

Plaintiff's argument strings inference upon inference. Plaintiff draws a connection between methods of delivery, but is not able to point to evidence that North Bros. was the only distributor that utilized the railways for distribution. Furthermore, Mr. Attaway, in the same deposition, goes on to say that North Bros. also used trucks to distribute materials. (Def.'s Reply Mem. in Supp. of Mot. Summ. J. at 6.) Again, the only information that can be certainly ascertained from Borders's testimony is that Owens-Corning Kaylo pipe covering was used at the Plant but not that North Bros. was the distributor of any of these asbestos products.

### 3. North Bros. Authorized Coverage Area for the Distribution of Owens-Corning Kaylo

The third piece of circumstantial evidence is the existence of a non-exclusive franchise agreement between North Bros. and Owens-Corning, granting North Bros. the authority to distribute Kaylo in the Virginia counties of Lee, Wise, Dickenson, Buchanan, Tazawell, Smyth, Washington, Russell and Scott. (Pl.'s Resp. to Mot. Summ. J. at 10, Exh. A-21.) The Plant is located in Smyth County and Washington County in Virginia. Both of these counties are named as part of North Bros.'s coverage area in the franchise agreement.

Plaintiff identifies instances where North Bros. distributed Kaylo pipe covering and block insulation in Scott County, Virginia (in 1955) and in Russell County, Virginia (in 1958). (Pl.'s Resp. to Mot. Summ. J. at 11, Exh. J.) There is no evidence on the record that North Bros. ever distributed asbestos products in Smyth or Washington Counties, let alone to the Plant specifically.[4]

_____

[4] In its motion for summary judgment, Defendant specifically notes that there is no record of sales invoices between the Plant and North Bros. (Def.'s Br. in Supp. of Mot. Summ. J. at 6.) Plaintiff argues that Defendant's argument is a red herring because this type of direct evidence is not necessary to overcome a motion for summary judgment, and in fact, these records would not have been retained anyway. (Pl.'s Resp. to Mot. Summ. J. at 15.) Plaintiff points to evidence that North Bros. kept sales invoices for only 1-2 years as a matter of course, and that the Plant was closed for environmental reasons in 1972 with the building demolished and the records recycled. (Id. at 15-16.) Plaintiff argues that, as a result, the lack of

To the contrary, there is some evidence that other companies distributed Owens-Corning Kaylo to the Plant. Defendant, in supplemental briefing to its motion for summary judgment, and at oral argument, points to evidence that C.E. Thurston distributed Owens-Corning Kaylo pipe covering to the Plant during the time that the Decedent was employed there.[5]

---

sales invoices is easily explained.

[5]     Plaintiff, in a motion filed in response to Defendant's supplemental briefing, seeks to strike this evidence from the record. (Pl.'s Mot. to Strike Supplement to NSI's Reply at 1.) Plaintiff advances three arguments in support of its motion to strike. First, that the evidence was produced after the deadline for discovery. (Id. at 4.) Second, that the evidence should be barred by judicial estoppel. (Id. at 5.) Third, that the supplemental documents are unauthenticated, inadmissible hearsay, and therefore, should not be considered by the Court. (Id. at 8.)

        The Court finds each of these arguments unavailing. First, as Defendant pointed out at oral argument, these documents were discovered through a laborious process of reviewing C.E. Thurston's records. They were not documents in the "possession, custody, or control" of North Bros. at the time that discovery closed. See Fed. R. Civ. P. 34(a)(1). Finally, once the documents were uncovered by North Bros., they were attached to Defendant's supplemental briefing, filed with the Court, and served on the Plaintiff. The production of these documents was never requested by Plaintiff during discovery by subpoena, request for production, interrogatory or otherwise. Therefore, production was not required under Rule 34(a)(1) prior to the close of discovery.

        Second, judicial estoppel "bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." Ocasio v. Ollson, 596 F.Supp.2d 890, 902 (E.D. Pa. 2009) (quoting Montrose Med. Group Participating Savings Plan v. Bulger, 243 F.3d 773, 779 (3d. Cir. 2001)). To apply the doctrine of judicial estoppel, the party to be estopped must have taken two "irreconcilably inconsistent" positions. The party must have changed their position in bad faith, and estoppel must be "tailored to address the harm identified." Montrose Med. Group, 243 F.3d at 779-80.

11

North Bros. was able to uncover invoices and purchase orders on

C.E. Thurston stationary which show that C.E. Thurston delivered

Owens-Corning Kaylo to the Plant for at least five months during

the period when the Decedent worked there. (Def.'s Supp. Reply

Memo. in Supp. of Mot. Summ. J. at Exh. A,B,C.) Even though the

---

Plaintiff claims that when Defendant filed a motion on
June 5th, 2009, seeking to quash Plaintiff's subpoenas as
"impermissible discovery requests outside the scope and deadlines
imposed by the Scheduling Order," Defendant took a position
irreconcilably inconsistent with its request for the Court to
consider the evidence of C.E. Thurston's distribution to the
Plant. (See Doc. no. 27.) Plaintiff further argues that these
inconsistent positions were taken in bad faith, and that striking
this evidence from the record is a remedy narrowly tailored to
address the harm identified. (Pl.'s Mot. to Strike Supplement to
NSI's Reply at 5.)
        The Court finds that Defendant has not taken an
inconsistent position in this case. The motion to quash sought
to disallow formal discovery beyond the period allowed for in the
scheduling order. Defendant's supplemental briefing added
material to the record which was never subject to formal
discovery, was not in Defendant's custody, possession or control
at the close of discovery, and was discovered through the
independent investigation of the Defendant in pursuing its case.
Since these positions are not irreconcilably inconsistent, the
application of judicial estoppel is inappropriate.
        Finally, the records have been authenticated by
affidavit of the records custodian for C.E. Thurston. (William
W. Nexsen Aff.) Moreover, these documents (purchase orders,
invoices, and specifications contracts) fall squarely within the
hearsay exception for business records. Fed. R. Evid. 803(6).
The affidavit of Mr. Nexsen establishes that the purchase orders,
invoices and contracts were made at the time of each transaction,
by a person with knowledge of the transaction. Second, these
documents were made in the regular course of business activity by
C.E. Thurston, and it was the regular practice of the company to
compile this information. (Nexsen Aff. at 2.) Therefore, the
Court finds that the documents are admissible as they are
authentic and non-hearsay.
        Plaintiff's motion to strike is denied, and the Court
will consider the evidence submitted in Defendant's supplement to
its reply in support of summary judgment.

documents cover only a short period of time, they are the only direct evidence of any distribution of Owens-Corning products to the Plant.  Plaintiff has not pointed to evidence of any deliveries by North Bros. to the Plant or either of the counties where the Plant is located.

The facts establish, and North Bros. admits, that they were a party to a non-exclusive franchise agreement with Owens-Corning to distribute in the general region where the Plant was located.  However, there is a dearth of direct or circumstantial evidence to support Plaintiff's argument that North Bros. distributed Kaylo to the Plant.

As to direct evidence, there are no records, from any source, of deliveries of materials from North Bros. to the Plant. The only direct evidence on the record shows that C.E. Thurston, not North Bros., distributed Kaylo to the Plant.  As to circumstantial evidence, Plaintiff fails to produce evidence from which a reasonable jury could infer that North Bros., and not C.E. Thurston or another company, distributed Kaylo in Smyth and Washington County in general or to the Plant specifically.  Under the circumstances, no genuine issue of material fact exists, and as such, Defendant is entitled to judgment on the issue of whether North Bros. distributed Kaylo to the Plant, thereby exposing the Decedent to the asbestos which caused his mesothelioma.

C.  <u>Proximate Causation</u>

    1. <u>Virginia Substantive Law</u>

In a products liability case under Virginia law, "a plaintiff bears the burden to produce evidence showing that the defendant was the proximate cause of the injury sustained." <u>McCauley v. Purdue Pharma L.P.</u>, 331 F. Supp. 2d 449, 461 (W.D. Va. 2004) (citing <u>Blacka v. James</u>, 139 S.E.2d 47, 50 (Va. 1964)). Furthermore, when there are multiple causes for a plaintiff's injury, "a plaintiff must still link the defendant's act to the injury by proving specific causation and may not rely on mere speculation and conjecture." <u>Id.</u> at 463.

The <u>Watson</u> case also discusses the quantum of proof necessary to show that a defendant's conduct was a proximate cause of the plaintiff's injury.  413 S.E.2d at 639. The issue in <u>Watson</u> was whether the Administratrix of the estate had "produced evidence which leads to a conclusion with probable certainty that Watson contracted mesothelioma as a result of his exposure to Kaylo." <u>Id.</u>  There, the plaintiff was able to show exposure to Kaylo by showing that he was exposed to asbestos, that asbestos causes mesothelioma, that Owens-Corning admitted selling asbestos to the shipyard where the plaintiff worked, and that plaintiff had testified to working with Owens-Corning Kaylo at the shipyard.  <u>Id.</u>  This circumstantial evidence was sufficient to sustain a finding in favor of the plaintiff.  <u>Id.</u>

The evidence presented in <u>Watson</u>, however, is far more persuasive than the evidence presented by Plaintiff in this action.

### 2. Circumstantial Evidence of Causation

Assuming that Plaintiff can show that North Bros. delivered Kaylo to the Plant at the relevant time, nonetheless Defendant argues that it is entitled to summary judgment because the Plaintiff has not met her burden of proof regarding causation. (Def.'s Br. in Support of Mot. Summ. J. at 8-9.) Defendant contends that, under the facts of this case, no reasonable jury could conclude that North Bros. was the proximate cause of the Decedent's injuries without relying on speculation or conjecture. (<u>Id.</u> at 9.) Defendant points to the lack of direct evidence that the Plaintiff was ever near any asbestos product that was distributed by North Bros. between 1958 and 1972. (<u>Id.</u>)

Plaintiff again attempts to overcome Defendant's argument by pointing to circumstantial evidence. Plaintiff begins by pointing out the undisputed fact that the Decedent was exposed to Kaylo over a prolonged period while employed at the Plant. (Pl.'s Resp. to Def.'s Mot. Summ. J. at 16.) Additionally, Plaintiff points to the fact that the Plant never required safety equipment, and Decedent was often tasked with jobs that required him to breathe in airborne asbestos particles. (<u>Id.</u> at 17.) Plaintiff follows this with evidence, both expert

and factual, that inhalation of asbestos fibers was the cause of the Decedent's mesothelioma. (Id. at 17-18.) Plaintiff avers that a reasonable jury, looking at the cumulative effect of the evidence, could conclude: 1) that Plaintiff was exposed to asbestos at the Plant; and 2) that North Bros. distributed these asbestos products to the Plant during the relevant time period. Thus, Plaintiff argues, Kaylo products distributed by North Bros. were the proximate cause of Decedent's injuries.

In order to survive summary judgment on the issue of causation, however, Plaintiff must produce enough evidence to raise a genuine issue of material fact as to whether the Decedent was exposed to Kaylo distributed to the Plant by North Bros. While questions of proximate cause are generally left for a jury determination, when there is no genuine issue of material fact and reasonable people could not differ as to the inferences to be drawn from the facts, summary judgment should be granted. See Banks v. City of Richmond, 348 S.E. 2d 280, 284 (Va. 1986).

Here, the undisputed facts clearly show that Kaylo was present at the Plant. However, Plaintiff has produced little evidence to prove North Bros. distributed Kaylo to the Plant. Given the evidence that at least one other distributor delivered Kaylo to the Plant, a reasonable jury could not infer, without engaging in significant guesswork, that North Bros. distributed the Kaylo that was the cause of Decedent's injuries. Therefore,

16

summary judgment for North Bros. is proper in this case.


IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment will be granted.

An appropriate order follows.